UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JAMES DUANE RILEY,<br><br>        Petitioner,<br><br>   vs.<br><br>DOUGLAS WEBER,  MIKE DURFEE STATE PRISON, SPRINGFIELD, SD; AND MARTY JACKLEY, THE ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA;<br><br>        Respondents. | 5:15-CV-05073-JLV<br><br><br>REPORT AND RECOMMENDATION ON RESPONDENTS' MOTION TO DISMISS [DOCKET 18] & MOTION FOR SUMMARY JUDGMENT [DOCKET 22] |

**INTRODUCTION**

Petitioner, James Duane Riley, was convicted of a state crime in Custer County, South Dakota, and is currently incarcerated at Mike Durfee State Prison.  He has filed an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Docket 16.  Respondents have filed a motion to dismiss claims 1d, 2 and 3 and have filed supporting briefs.  Docket Nos. 18 and 20.  Mr. Riley resists the motion.  Docket No. 19.  Respondents have also filed a statement of undisputed facts (Docket No. 25), supporting affidavits (Docket Nos. 23 & 31) and a motion for summary judgment with supporting briefs regarding claims 1a, 1b, and 1c.  Docket Nos. 22 & 30.  Mr. Riley resists and has filed an objection to the statement of undisputed facts (Docket 26) and a brief in resistance to the summary judgment motion.  Docket No. 28.  This matter was referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)

and the October 16, 2014, standing order of the Honorable Jeffrey L. Viken, Chief United States District Judge.

## FACTS

The court has reviewed and taken judicial notice of the file (including transcripts) from Mr. Riley's underlying criminal conviction, State v. Riley, CR 10-113 (Seventh Judicial Circuit, Custer County, South Dakota) affirmed by State v. Riley,  841 N.W.2d 431 (S.D. 2013)("Riley I"), and his state habeas proceedings (including transcripts), Riley v. Dooley, CR 10-113, (Seventh Judicial Circuit, Custer County, South Dakota)[1], affirmed by Riley v. Young, 879 N.W.2d 108 (S.D. 2016) ("Riley II").  See Green v. White, 616 F.2d 1054 (8th Cir. 1980) (court of appeals may take judicial notice of district court filings); Matter of  Phillips, 593 F.2d 356 (8th Cir. 1979) (proper for federal court to take judicial notice of state court pleadings); Hood v. United States, 152 F.2d 431 (8th Cir. 1946) (federal district court may take judicial notice of proceedings from another federal district court).

---

[1] Mr. Riley's state habeas petition and attachments were dated November 17, 2014.   SR 779-797.  They were not filed, however, until December 15, 2014, when Judge Trimble issued his letter decision denying the petition, and even then were only filed as attachments to the letter denial.  SR 774-797. Additionally, Mr. Riley's state habeas pleadings were filed in his state criminal file instead of in a separate civil file, an ongoing impropriety for which the South Dakota Supreme Court chastised the Seventh Judicial Circuit in Riley II. See Riley II, 879 N.W.2d at 111.

**A. Conviction.**

The facts of Mr. Riley's conviction are gleaned from the South Dakota Supreme Court's reported decision of Mr. Riley's appeal, the state court transcripts,[2] and documents from the settled record (SR) in the state court criminal file.  Mr. Riley's arrest and subsequent indictment on child pornography charges arose out of an undercover investigation conducted by the South Dakota Internet Crimes Against Children Task Force (Task Force). Riley I, 841 N.W.2d at 432, JT at 78.

On October 20, 2009, Task Force member Detective Derek Kuchenreuther conducted an online investigation using software capable of creating a list of internet protocol (IP) addresses[3] that had recently possessed visual depictions of child pornography.  Riley I, 841 N.W.2d at 432-33; JT at 83.  Special software, "EP2P," allowed Detective Kuchenreuther to view and download files available for download from a particular IP address.  Riley I, 841 N.W.2d at 433; JT at 83.

_____

[2] References to the transcripts of the jury trial will be by JT followed by the appropriate page number. Though the jury trial transcript is divided into two volumes, the volumes are paginated consecutively (1-321).  This court's reference will be to the internal transcript page, as distinguished from the page numbers assigned to the transcript in the settled record (SR) of the entire state court proceedings.  References to documents filed in this, Mr. Riley's federal habeas proceeding, will be by this court's docket number.

[3] "An IP address is a unique identifier assigned by an internet service provider . . .  to a subscriber that can be used to determine the physical location of the subscriber[.]"  Riley I, 841 N.W.2d at 432, n.1 (quoting United States v. Conner, 521 Fed. Appx. 493, 495 (6th Cir. 2013)).

The entirety of Kuchenreuther's online investigation of what was later identified as Mr. Riley's IP address was video recorded and a copy of that video recording was entered into evidence.  JT at 87-90; Exhibit 2.  In addition, several still screen shots from the video were introduced into evidence to show the jury what Kuchenreuther was seeing as he conducted his online investigation of the LimeWire[4] files available through Mr. Riley's IP address.

Kuchenreuther testified he observed 79 titles suggestive of child pornography were being shared on LimeWire from Mr. Riley's IP address.  JT at 94-95.  Without downloading each file and then opening the file, Kuchenreuther could not verify whether a file actually contained child pornography.  JT at 100.  Kuchenreuther selected three titles from the list of 79 videos available at Mr. Riley's IP address and attempted to download them. JT at 96.  Kuchenreuther only obtained a complete download of one video and

---

[4] "Limewire is a publicly available peer-to-peer file-sharing program that allows users to download a file directly from other users for free.  As recently explained by the Ninth Circuit:

> LimeWire . . . connect[s] network participants directly and allow[s] them to download files from one another.  To download a file, a LimeWire user opens the application and inputs a search term. LimeWire then displays a list of files that match the search terms and that are available for download from other LimeWire users.  When a user downloads a file using the LimeWire network, he or she causes a digital copy of a file on another user's computer to be transferred to his or her own computer.

United States v. Flyer, 633 F.3d 911, 913 (9th Cir. 2011) (internal citations omitted).  By default, LimeWire stores downloaded files in a shared folder that is accessible to other LimeWire users.  United States v. Budziak, 697 F.3d 1105, 1108 (9th Cir. 2012)." Riley I, 841 N.W.2d at 433, n. 2.

a 3% download of a second video before the computer at Mr. Riley's IP address went offline, making the list of 79 videos unavailable at that point.  JT at 100-06.

The title of the one video he downloaded in its entirety was "13yo brother fucks 11yo sisterucks."[5]  JT at 100-01, 107-08.  As to this video, Kuchenreuther testified he viewed the video and it contained child pornography.  JT at 107-08.  Kuchenreuther testified he recognized this video from other investigations as a widely-traded child pornography video that was very popular within the child pornography community.  JT at 108-09.  Kuchenreuther testified the girls depicted in the video were between 14 and 16 years old.  JT at 110.  In other investigations the video was commonly called "Dee and Desi."  JT at 109.  The "13yo" video Kuchenreuther downloaded in its entirety from Mr. Riley's IP address was then played for the jury.  JT at 109-10.

The 3% partial video did not contain child pornography, but depicted an adult female removing the pants of a female child.  Riley I, 841 N.W.2d at 433; JT at 111.  Though the portion of the partial video he downloaded did not contain child pornography, Detective Kuchenreuther recognized the video from previous investigations.  Riley I, 841 N.W.2d at 433; JT at 112.   He knew from his previous investigations that the partial video was part of a longer video which, in its entirety, did contain child pornography.  Riley I, 841 N.W.2d at 433; JT at 111.

_____

[5] Kuchenreuther testified the abbreviation "yo" mean "years old."  JT at 101.

Detective Kuchenreuther served a subpoena on the Internet service provider to trace the IP address offering this child pornography to a specific residence in Hermosa, South Dakota.  The physical location linked to the IP address was Mr. Riley's residence.  Riley I, 841 N.W.2d at 433; JT at 136. Thereafter, Brent Gromer, a South Dakota Division of Criminal Investigation (DCI) Agent, applied for and obtained a warrant to search Mr. Riley's residence. Riley I, 841 N.W.2d at 433; JT at 172-73.

On the afternoon of January 15, 2010, Agent Gromer and a team of law enforcement officials arrived at Mr. Riley's home to conduct the search.  Riley I, 841 N.W.2d at 433; JT at 173, 175, 189-91.   Mr. Riley was not at home when the team arrived.  Riley I, 841 N.W.2d at 433; JT at 173.  Mr. Riley's live-in girlfriend, Lori Wenzlik, was home; she told officers Mr. Riley was on an out-of-state trip.  Riley I, 841 N.W.2d at 433; JT at 175-76.  The officers asked Lori about the computer and associated equipment (thumb drives, DVDs, CDs, etc.).  JT at 183-84.  Lori stated Mr. Riley had the computer and all associated equipment with him.  Riley I, 841 N.W.2d at 433; JT at 175-76.  Lori testified at trial there was one primary computer being used at the home she shared with Mr. Riley and only Mr. Riley used it.  JT 188-89.  Lori showed the officers where Mr. Riley customarily kept his computer-related equipment, but everything associated with the computer was gone except the modem.  JT at 184.  Lori told the officers Mr. Riley was expected to return home late that same night or early the next morning.  Riley I, 841 N.W.2d at 433; JT at 173. Agent Gromer told Lori the team would return at 6:00 a.m. the next morning to

execute the warrant, and that she must not inform Mr. Riley.  Riley I, 841 N.W.2d at 433; JT at 176.

Lori testified Mr. Riley arrived home at 1 a.m. on January 16, 2010, whereupon she told him police had been there earlier to search and would be returning at 6 a.m.  JT at 192-93.  Mr. Riley immediately began working on his computer, continuing until Agent Gromer arrived at approximately 6:30 a.m. Id.  Mr. Riley told Lori his computer had "crashed" in California.  JT at 193. Lori was not sure what Mr. Riley was doing on the computer.  Id.

At 6:30 a.m. on January 16, 2010, the search team returned to Mr. Riley's home to execute the warrant.  Riley I, 841 N.W.2d at 433; JT at 195. Mr. Riley had been drinking and was apparently in a state of some undress, but was cooperative and agreed to speak with Agent Gromer.  Riley I, 841 N.W.2d at 434; JT at 195.  Gromer's interview of Mr. Riley was audio recorded and the recording was played for the jury.  JT at 198.

Mr. Riley was a former IBM employee, having worked there for twenty-five years.  Riley I, 841 N.W.2d at 434; Trial EX 11.  He admitted to Agent Gromer he had used LimeWire to download music and that he had "glanced" at child pornography.  Riley I, 841 N.W.2d at 434; JT at 199; Trial EX 11.  When Agent Gromer played the 3% partial video and asked Mr. Riley if he had seen it previously, Mr. Riley exclaimed:  "Yes, I've seen it.  Holy f---g shit.  Yes, I've seen it."  JT at 199.

Agent Gromer then played the full video and asked the same question, but this time Mr. Riley denied he had seen this video.  Riley I, 841 N.W.2d at

7

434; JT at 200; Trial EX 11. When Agent Gromer told Mr. Riley he knew Mr. Riley was sharing 79 child pornography video files, Mr. Riley blurted out, "it's gone." Riley I, 841 N.W.2d at 434; JT at 200; Trial EX 11.  Mr. Riley did not admit he had ever downloaded, possessed, or purposely deleted child pornography videos. Riley I, 841 N.W.2d at 434; Trial EX 11.

The search team seized Mr. Riley's laptop computer, two thumb drives, an MP3 player, and three DVDs from Mr. Riley's residence. Riley I, 841 N.W.2d at 434; JT at 200-01.  They did not seize a second computer which was in the home. Riley I, 841 N.W.2d at 434.[6]  Their forensic analysis did not reveal any visual depiction of child pornography on any of the items seized. Riley I, 841 N.W.2d at 434; JT at 232-33.  Mr. Riley's computer also did not contain the LimeWire program, or any other peer-to-peer programs, though Mr. Riley had readily admitted to using LimeWire to download music. Riley I, 841 N.W.2d at 434; Trial EX 14 .

In July, 2010, a grand jury indicted Mr. Riley on two counts of possession of child pornography in violation of SDCL § 22-24A-3(3). State v. Riley, CR 10-113 (Seventh Judicial Circuit Court, Custer County, South Dakota) SR 1.  Count I pertained to possession of the complete video and Count II pertained to possession of the 3% partial video. Riley I, 841 N.W.2d at 434; SR 238.

---

[6] Lori explained Mr. Riley's computer was the only computer in the house of which she was aware that was functional; the only functional computer was the one he had taken with him to California.  JT at 175, 188-89.

Mr. Riley's jury trial was held in January, 2012.  The Honorable Jeff Davis, circuit court judge, presided.  Riley I, 841 N.W.2d at 431.   Five witnesses testified.  JT 78-288.  Detective Kuchenreuther explained his undercover online investigation as described above.  JT at 78-168.  Agent Gromer described his interview with Mr. Riley which occurred during the execution of the search warrant at Mr. Riley's residence.  JT at 169-85; see Trial EX 11.

Lori also testified.  JT at 186-93.  She explained Mr. Riley used the internet, and he was the sole person in the house who used the only functional computer.  JT at 188-89.  She believed he used LimeWire to download music. JT at 189.  She admitted that when Mr. Riley returned home at approximately 1:00 a.m. on January 16, 2010, she told him law enforcement had been there the day before and that they planned to return at 6:00 that morning to execute a search warrant on his computer.  JT at 192.

Rapid City Police Department Detective Russ Eisenbraun testified about the forensic analysis of Mr. Riley's computer.  JT 209-54.  Detective Eisenbraun's forensic analysis did not find the LimeWire program or any visual depiction of child pornography, including in the unallocated space[7] and the

---

[7] Unallocated space is "space on a hard drive that contains deleted data, usually emptied from the operating system's trash or recycle bin folder, that cannot be seen or accessed by the user without the use of forensic software. Such space is available to be written over to store new information.  Even if retrieved, all that can be known about a file in unallocated space (in addition to its contents) is that it once existed on the computer's hard drive.  All other attributes—including when the file was created, accessed, or deleted by the

cache.[8] JT 220; Trial EX 14.  Detective Eisenbraun found several bad sectors[9] on the computer, and he determined the operating system had been reinstalled at approximately 5:37 a.m. on January 16, 2010, or about one hour before the search team arrived to execute the search warrant.  JT 219.  Detective Eisenbraun explained a computer does not automatically reinstall its own operating system but must be directed to do so.  JT 221.  Detective Eisenbraun further explained that reinstalling the operating system could override any information contained on the computer's hard drive, including the unallocated space.  JT 220.

Detective Eisenbraun's examination revealed a significant amount of music had been removed from the computer and transferred to the thumb drives shortly before the operating system was reinstalled on Mr. Riley's

---

user—cannot be recovered."  Riley I, 841 N.W.3d at 434, n. 5 (quoting Flyer, 633 F.3d at 918).

[8]"The cache is a folder which stores a copy of webpages viewed by a user.  'When a computer user views a webpage, the computer automatically stores a copy of that webpage in a folder known as the cache.  The copy is retained in a file called a temporary internet file.  When the user revisits that webpage, the computer can load the page more quickly by retrieving the version stored in the cache.  The computer automatically deletes temporary internet files when the cache –which has limited storage space—becomes full.  Once full, the computer begins to delete the files on a 'first in, first out' basis.  Users may also manually delete files from the cache, or use commercial software to remove the files.' " Riley I, 841 N.W.2d at 434, n. 6 (quoting United States v. Moreland, 665 F.3d 137, 142 (5th Cir. 2011)).

[9] A bad sector is a sector or section on a computer's hard drive that has been physically damaged.  JT 276-77.

computer.  JT at 226.  Mr. Riley's computer only had a basic file structure that made it look brand new.  JT at 217; Trial EX 14.

Detective Eisenbraun used a "screen shot" from Detective Kuchenreuther's investigation to compare text-strings which remained on Mr. Riley's computer[10] on January 16, 2010, to the file names which were associated with Mr. Riley's IP address by Detective Kuchenreuther on October 9, 2009.  JT 227-28; Trial EX 14.  This search revealed several strings of words within the unallocated space on the hard drive of Mr. Riley's computer which matched the file name or a variation of a file name of the two video files whose titles were identified and downloaded by Detective Kuchenreuther as suggestive of child pornography and that were being shared by Mr. Riley's IP address on October 9, 2009. JT at 228; Trial EX 14.

Detective Eisenbraun conceded that a text string which is suggestive of child pornography does not necessarily mean the file which was connected to that text string contained child pornography, only that the text *suggests* the file contained child pornography.  JT at 228.   Detective Eisenbraun found multiple text strings in the unallocated space on Mr. Riley's computer that matched the file name or a variation of the file name for the complete video Detective Kuchenreuther downloaded from Mr. Riley's IP address on October 9, 2010. Riley I, 841 N.W.2d at 435; Trial EX 14.  The complete video which was

---

[10] Detective Eisenbraun's report indicates these text strings were found on the computer's "drive free space" which he defined as the file slack and unallocated space on the hard drive.  See Trial EX 14, p. 6.

downloaded on October 9, 2010, from Mr. Riley's IP address with the file name which matched the text strings found by Detective Eisenbraun on Mr. Riley's computer did contain child pornography.  JT at 109.

Mr. Riley also employed an expert witness for trial.  JT at 255-88. Mr. Dan Meinke explained that numerous users can use the same IP address. JT at 270.  This is because many people could use the same computer, or many devices could be behind a single IP address.  Id.  Therefore, Mr. Meinke explained, an investigator such as Detective Kuchenreuther cannot tell simply by looking at an IP address how many devices are connected to it or which person is using the IP address at any given time.  JT 270-71.

Mr. Meinke also explained that re-installing the operating system on a computer could, but would not necessarily, delete files the user had created. JT at 277.  He opined reinstalling the operating system might delete "some" but would not delete "most" user-created files.  Id.  Mr. Meinke reinstalls operating systems on his own customers' computers every day without losing their data. Id.  Mr. Meinke also explained LimeWire users can assign a file whatever name and extension designation they wish.  JT at 266.  In other words, a video can be made to look like a Microsoft Word® document and vice versa.  Id.

During Detective Kuchenreuther's testimony, he described the complete child pornography video which he downloaded from Mr. Riley's IP address on October 9, 2010.  When the State sought to publish the video to the jury, the following conversation occurred between the judge, the prosecutor, and the defense attorney:

12

| | |
|---|---|
| Prosecutor: | Your honor, I would, at this time, move to publish this to the jury. I would make a motion to close the courtroom for viewing. |
| Judge: | I think we only have people present who are officers or staff and an expert, right? So we're good to go. |
| Prosecutor: | Your Honor, I would note that there's one gentleman in the courtroom not associated with law enforcement or the experts. |
| Judge: | Is that a member of you folks' team? |
| Defense Attorney: | Yes, your Honor. He's somebody associated with Jim and we just as soon he stick around if he wants to or he can leave. |
| Judge: | All right, either way. |

See JT at 109-10. After this exchange, the pertinent portion of the video was played for the jury. Id.

Mr. Riley's counsel moved for a judgment of acquittal at the close of the state's case, and again at the close of the evidence. JT 250, 289; Riley I, 841 N.W.2d at 436. Judge Davis denied both motions. JT 253, 289-90, Riley I, 841 N.W.2d at 436. On January 25, 2012, the jury found Mr. Riley guilty as to Count I of the indictment (pertaining to the complete video) but it could not reach a verdict as to Count II (pertaining to the 3% partial video). JT at 317; SR at 240. On April 10, 2012, Judge Davis sentenced Mr. Riley to eight years' imprisonment in the South Dakota State Penitentiary. SR at 335-37; Docket 1-1, p. 4.

**B. Direct Appeal.**

Mr. Riley timely filed a direct appeal.  The sole issue Mr. Riley raised on direct appeal was the sufficiency of the evidence to support his conviction for possession of child pornography.  Riley I, 841 N.W.2d at 432.  On December 18, 2013, the South Dakota Supreme Court affirmed his conviction.  Id. at 438.

**C. Petition for Writ of Certiorari.**

Mr. Riley filed a petition for writ of certiorari with the United States Supreme Court.  Docket 1-4.  On May 27, 2014, the United States Supreme Court denied the petition.  Id.

**D. State Habeas Corpus Petition.**

On November 17, 2014, Mr. Riley timely filed a *pro se* state habeas petition.  Docket 17-4, pp. 18-21.  The issues Mr. Riley raised in his state habeas petition were:

1. His jury trial was impermissibly closed to the public in violation of his Sixth Amendment right to a public trial;

2. His trial counsel was ineffective, in violation of his Sixth Amendment right to assistance of counsel, by failing to object to the improper courtroom closure; and

3. His trial counsel was ineffective, in violation of his Sixth Amendment right to assistance of counsel, by failing to move for a judgment of acquittal after closing arguments because no visual depiction of child pornography was ever found in his possession or on devices possessed by him.

Id. at 20-21.  On December 4, 2014, the circuit court, the Honorable Thomas Trimble, issued a memorandum decision denying Mr. Riley's state habeas petition without appointing counsel and without conducting an evidentiary

hearing.  Docket 17-4 at 12-16.  Judge Trimble denied a certificate of probable cause within the memorandum opinion.  Id. at 16.

On June 15, 2015, the South Dakota Supreme Court issued a certificate of probable cause.  Docket 1-5.  Mr. Riley thereafter appealed the circuit court's denial of his state habeas petition.  On April 27, 2016, the South Dakota Supreme Court affirmed.  Riley v. Young, 879 N.W.2d 108 (S.D. 2016) (Riley II).

**E.  Federal § 2254 Habeas Corpus Petition.**

On October 8, 2015, Mr. Riley timely filed his *pro se* § 2254 habeas corpus petition.  Docket 1.  Seven months later, on May 16, 2016, counsel filed a notice of appearance (Docket 11) and on July 14, 2016, filed an amended petition (Docket 16).  The amended petition "expands and clarifies" Mr. Riley's *pro se* claims, but does not identify additional grounds for relief.   Compare Docket 1 with Docket 16.  The claims Mr. Riley asserts in his amended § 2254 petition are:

> 1.   a.   Counsel failed to discuss with petitioner any discovery provided by the prosecution pertaining to the description of a video used to "shock and awe" the jury.  Thus no preparation was made to question the origination of the video the prosecution claimed to have obtained electronically via the internet. [11]
>
> b.   Counsel failed to interview or call petitioner's daughter, Staci Klansky.  Ms. Klansky was a critical witness.  She had been with petitioner while he was in California and could have testified that petitioner's computer had "crashed" and

---

[11] All four parts of Mr. Riley's first claim for relief are fashioned as sub-parts of a single ineffective assistance claim which is entitled "Ineffective assistance of counsel—Failure to investigate."  See amended petition, Docket 16, p. 5).

required rebuilding.  This testimony would have debunked the State's claim that the computer system had been reloaded to destroy contraband.

    c.    Counsel failed to establish testimony from a defense expert witness that anyone with access to an Internet Service Provider (ISP) can use a valid Internet Protocol (IP) address as long as it is not in use by another device.[12]

    d.    Counsel failed to object to the improper courtroom closure.

2.    The improper closure of the courtroom violated Petitioner's Sixth Amendment right to a public trial.

3.    Petitioner was convicted without sufficient evidence to support the conviction, in violation of his Due Process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

Respondents, through their motion to dismiss and their motion for summary judgment, ask for dismissal of all of Mr. Riley's claims on various grounds.

## DISCUSSION

## A. Principles Generally Applicable to § 2254 Petitions.

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of  the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In considering such a petition, the federal courts are constrained by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), to exercise only a "limited and deferential review of underlying state court decisions."  Osborne v. Purkett, 411 F.3d 911, 914 (8th Cir. 2005).  A federal court may not grant a writ of habeas corpus unless the state court's

---

[12] Mr. Riley withdrew this claim from consideration.  See Docket 28, p. 9.  It will therefore not be discussed in this opinion and the court recommends its dismissal, with prejudice.

adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1).  A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from the Court's precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A federal habeas court may not issue the writ merely because it concludes the state court applied clearly established federal law erroneously or incorrectly. Id. at 411.  "Rather, that application must also be *unreasonable*."  Id. (emphasis added).

The state court's factual findings are presumed to be correct, and a federal habeas court may not disregard the presumption unless specific statutory exceptions are met.  Thatsaphone v. Weber, 137 F.3d 1041, 1045 (8th Cir. 1998); 28 U.S.C. § 2254(e).  A federal habeas court "may not simply disagree with the state court's factual determinations.   Instead it must conclude that the state court's findings lacked even fair support in the record." Marshall v. Lonberger, 459 U.S. 422, 432 (1983).

**B. State Court Exhaustion.**

Under ADEPA, federal habeas review of state court convictions is limited to claims the petitioner previously presented to the state courts for consideration:

17

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
    (A) the applicant has exhausted the remedies available in the courts of the state; or
    (B)    (i) there is an absence of available State corrective process; or
        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

* * *

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

See 28 U.S.C. § 2254(b) and (c).

"[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). If a ground for relief in the petitioner's claim makes factual or legal arguments that were not present in the petitioner's state claim, then the ground is not exhausted. Kenley v. Armontrout, 937 F.2d 1298, 1302 (8th Cir. 1991). The exhaustion doctrine protects the state courts' role in enforcing federal law and prevents the disruption of state judicial proceedings. Rose v. Lundy, 455 U.S. 509, 518 (1982). The Supreme Court has stated:

Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

Rose, 455 U.S. at 518 (citation omitted).  The exhaustion rule requires state prisoners to seek complete relief on all claims in state court prior to filing a writ of habeas corpus in federal court.  Federal courts should, therefore, dismiss a petition for a writ of habeas corpus that contains claims that the petitioner did not exhaust at the state level.  See 28 U.S.C. § 2254; Rose, 455 U.S. at 522. The exhaustion requirement is waived "only in rare cases where exceptional circumstances of peculiar urgency are shown to exist."  Mellott v. Purkett, 63 F.3d 781, 784 (8th Cir. 1995).

A federal court must determine whether the petitioner fairly presented an issue to the state courts in a federal constitutional context.  Satter v. Leapley, 977 F.2d 1259, 1262 (8th Cir. 1992).  "To satisfy exhaustion requirements, a habeas petitioner who has, on direct appeal, raised a claim that is decided on its merits need not raise it again in a state post-conviction proceeding."  Id. "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan, 526 U.S. at 845.  "A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim." Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993).

Fairly presenting a federal claim requires more than simply going through the state courts:

> The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the

> claim sought to be vindicated in a federal habeas proceeding does
> it make sense to speak of the exhaustion of state remedies.
> Accordingly, we have required a state prisoner to present the state
> courts with the same claim he urges upon the federal courts.

Picard v. Connor, 404 U.S. 270, 276 (1971).  It is also not enough for the petitioner to assert facts necessary to support a federal claim or to assert a similar state-law claim.  Ashker, 5 F.3d at 1179.  The petitioner must present both the factual and legal premises of the federal claims to the state court. Smittie v. Lockhart, 843 F.2d 295 at 297 (8th Cir. 1988) (citation omitted). "The petitioner must 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.' " Ashker, 5 F.3d at 1179.  This does not, however, require petitioner to cite "book and verse on the federal constitution."  Picard, 404 U.S. at 278 (citing Daugharty v. Gladden, 257 F.2d 750, 758 (9th Cir. 1958)).  The petitioner must simply make apparent the constitutional substance of the claim.  Satter, 977 F.2d at 1262.

A federal court may not ordinarily adjudicate the merits of a habeas petition which contains both exhausted and unexhausted claims (a "mixed" petition).  Rose, 455 U.S. at 515.  The AEDPA one-year statute of limitations, however, often results in claims which are time-barred after being dismissed without prejudice in federal court for failure to exhaust.  A "stay and abeyance" procedure may be appropriate if a petitioner presents a petition "mixed" with exhausted and unexhausted claims.  Rhines v. Weber, 544 U.S. 269, 277 (2005).  No stay and abeyance is necessary, however, if the unexhausted claims

are "plainly meritless." Id.; 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Here, some of Mr. Riley's claims are clearly *not* exhausted at the state level. Mr. Riley presented three *pro se* issues to the state habeas court. Those issues were: (1) his jury trial was closed to the public in violation of the Sixth Amendment; (2) his trial counsel was ineffective, in violation of the Sixth Amendment, for failing to object to the courtroom closure; and (3) his trial counsel was ineffective, in violation of the Sixth Amendment, for failing to move for a judgment of acquittal at the close of evidence. He exhausted one issue (sufficiency of the evidence) on direct appeal. None of the other issues Mr. Riley now raises in this federal habeas were ever heard by the South Dakota courts. Riley I, 841 N.W.2d 431 (S.D. 2013); Docket 17-4, pp. 18-21, Riley II, 879 N.W.2d 108 (S.D. 2016).

Normally, the appropriate action for a federal court faced with unexhausted claims would be to dismiss the petition without prejudice to allow the petitioner to exhaust his state remedies, or to employ the "stay and abeyance procedure." Rhines, 544 U.S. at 277; Carmichael v. White, 163 F.3d 1044, 1045 (8th Cir. 1998). However, such dismissal is not an appropriate course of action where there are no nonfutile avenues of relief available to the petitioner in state court. Thus, this court must evaluate whether it would be possible for Mr. Riley to return to state court to exhaust the claims he has not exhausted.

Before being allowed to file a second or subsequent habeas petition, South Dakota law requires Mr. Riley to petition the circuit court and to show (1) his new claims are based upon newly discovered evidence that would establish no reasonable factfinder would have found him guilty or (2) that his application raises a new rule of constitutional law, made retroactive to cases on collateral review by the United States and South Dakota Supreme Courts, that was previously unavailable.  See SDCL § 21-27.5.1.[13]  This state statute is nearly identical to its federal counterpart (28 U.S.C. § 2244) which requires that, before a state prisoner is allowed to file a second or successive federal habeas corpus petition, he must show that his new claim either relies upon

---

[13] SDCL 21-27-5.1 provides as follows:

A claim presented in a second or subsequent habeas corpus application under this chapter that was presented in a prior application under this chapter or otherwise to the courts of this state by the same applicant shall be dismissed.

Before a second or subsequent application for a writ of habeas corpus may be filed, the applicant shall move in the circuit court of appropriate jurisdiction for an order authorizing the applicant to file the application.

The assigned judge shall enter an order denying leave to file a second or successive application for a writ of habeas corpus unless:

    (1) The applicant identifies newly discovered evidence that, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the applicant guilty of the underlying offense; or

    (2) The application raises a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court and the South Dakota Supreme Court, that was previously unavailable.  The grant or denial of an authorization by the circuit court to file a second or subsequent application shall not be appealable.

(1) a factual predicate which could not have been discovered earlier through due diligence or; (2) a new rule of constitutional law, previously unavailable, made retroactive to cases on collateral review by the United States Supreme Court.  See 28 U.S.C. § 2244(b)(2)(A) & (B)(i).  Additionally, the two-year time period allotted for filing a state habeas claim in South Dakota has now passed. See SDCL § 21-27-3.3.

Mr. Riley's unexhausted claims are all ineffective assistance claims which are newly articulated here in this federal forum, but which are not based upon new evidence.  Nor are his newly-articulated ineffective assistance claims based upon a new rule of constitutional law.  Because Mr. Riley's unexhausted federal claims do not fit into either category which would allow him to return to state court to exhaust his state remedies pursuant to SDCL § 21-27-5.1, he does not currently enjoy any non-futile state avenue for pursuing exhaustion of state remedies.  Welch v. Lund, 616 F.3d 756, 760 (8th Cir. 2010) (stating that by failing to pursue discretionary appeal to Iowa Supreme Court, federal petitioner had "technically" exhausted state remedies because no further remedy was available to him in state court) (citing Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982)).  See also Engesser v. Dooley, 686 F.3d 928, 937 (8th Cir. 2012) (petitioner not allowed to file second or successive § 2254 petition based upon ineffective assistance claim where, had petitioner exercised due diligence, factual basis for ineffective assistance claim was available to petitioner before he filed his first § 2254 petition); Moss v. Hobbs, 444 Fed. Appx. 108, 109 (8th Cir. 2011) (unpub'd) (petitioner denied permission to file second or successive

§ 2254 petition because the court determined all the facts upon which he relied were known to him before he filed his first § 2254 petition).

Therefore, although Mr. Riley did not first present to the highest state court the unexhausted claims contained in his federal habeas petition, this court cannot dismiss his petition without prejudice to allow him to exhaust. That is because Mr. Riley does not currently enjoy any non-futile state avenue for pursuing exhaustion of state remedies.  See SDCL § 21-27-5.1.

In Mr. Riley's case, the South Dakota Supreme Court was deprived of the opportunity to review the merits of all issues except those it decided on Mr. Riley's direct appeal (the sufficiency of the evidence issue) and his first state habeas petition (the Sixth Amendment issues regarding the claimed courtroom closure and counsel's alleged failure to move for judgment of acquittal.  Thus, as to the unexhausted claims, the court turns to the question of procedural default.

## C. Mr. Riley's Procedurally Defaulted Claims:  The Respondents' Motion for Summary Judgment.

Some of the claims Mr. Riley asserts in this, his federal § 2254 petition, are procedurally defaulted because he did not raise them in his direct appeal or first state *pro se* state habeas petition and he is now time-barred from bringing another state habeas petition.  See SDCL § 21-27.3.3 (two-year statute of limitations for South Dakota habeas applications).  Additionally, the issues Mr. Riley is attempting to raise for the first time in his federal petition do not fit within the statutory framework for claims which would be allowed by the South

Dakota state courts in second or successive state habeas petitions.  See SDCL § 21-27-5.1. As to these claims, the respondents move for summary judgment.

### 1.    Summary Judgment Standards.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Though not universally accepted, this district and the Eighth Circuit Court of Appeals have applied summary judgment procedures to the extent possible in habeas corpus proceedings. Compare e.g. Cantrell v. Norris 2007 WL 772568 at * 1 (E.D. Ark., March 9, 2007) ("the Rules Governing § 2254 cases and the habeas statutes do not contemplate disposition of habeas petitions by motion for summary judgment."); with Rhines v. Young, 2016 WL 615421 at * 4 (D.S.D., Feb. 16, 2016) (noting that the Federal Rules of Civil Procedure apply to § 2254 proceedings to the extent that they are not inconsistent with any statutory provisions or the rules governing such proceedings);[14] Lamp v. Iowa, 122 F.3d 1100, 1103 (8th Cir. 1997) (applying summary judgment procedure to habeas petitioner's claims).

---

[14] For example, in Rhines the court explained that in a § 2254 proceeding, the statutory provisions of the AEDPA which require a deferential standard of review for a state court's adjudication on the merits would override the ordinary rules applicable to motions for summary judgment.  Rhines, 2016 WL 615421 at * 4.

As noted in <u>Rhines</u>, summary judgment procedure is only partially applicable to § 2254 proceedings.   The reason is explained in <u>Dillard v. Blackburn</u>, 780 F.2d 509, 514 (5th Cir. 1986):

> Generally speaking, § 2254 habeas cases are governed by the Habeas Corpus Rules, 28 U.S.C. foll. § 2254 (1985).  These rules are special ones governing collateral attacks on criminal convictions and are distinct from both the Federal Rules of Criminal Procedure and Federal Rules of Civil Procedure.  This distinction is made because habeas corpus is a hybrid, being civil dispositions of already-resolved criminal matters.  Thus, habeas cases are not automatically subject to the rules governing ordinary civil actions.  <u>Schlanger v. Seamans</u>, 401 U.S. 487, 490 n.4 (1971); <u>Harris v. Nelson</u>, 394 U.S. 286, 298 (1969).  Rule 11 of the Habeas Corpus Rules expressly states that the Federal Rules of Civil Procedure *may* be applied to habeas petitions to the extent that they are not inconsistent with the habeas rules.  Rule 11, 28 U.S.C. foll. § 2254 (emphasis added).

<u>Id.</u> at 514.  Here, the court finds the application of Federal Rule of Civil Procedure 56 to be appropriate and not inconsistent with the rules governing habeas proceedings.

On summary judgment, the court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party.  <u>See Matsushita Elec. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587–88 (1986) (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)); <u>Helton v. Southland Racing Corp.</u>, 600 F.3d 954, 957 (8th Cir. 2010) (*per curiam*).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the

pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  <u>Anderson</u>, 477 U.S. at 256; FED. R. CIV. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment.  <u>Anderson</u>, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  <u>Id.</u> (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2725, at 93–95 (3d ed. 1983)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  <u>Id.</u> at 247–48.

### a. The Parties' Submissions Pursuant to FED. R. CIV. P. 56(c) and LR 56.1.

Pursuant to FED. R. CIV. P. 56(c) and LR 56.1, the respondents submitted a statement of undisputed material facts (Docket 25) and supporting affidavits (Dockets 23 & 31) and Mr. Riley submitted objections to the same (Docket 26). The following is the court's ruling on Mr. Riley's objections:

Mr. Riley objects to undisputed fact nos. 43, 44 and 45 as improper because they are not supported by citation to the record.  Mr. Riley asserts

27

these facts are not facts at all but instead are improper legal arguments and conclusions.  The court agrees.  A district court may strike speculative and conclusory affidavits from the record.  Broughton v. School Board of Escambia County, Florida, 540 Fed. Appx. 907 (11th Cir. 2013).  In Broughton the district court struck the non-movant's affidavits submitted in resistance to a summary judgment motion which "contained mostly legal conclusions and factual allegations [that] were not based on personal knowledge."  Id. at p. 911.  The Eleventh Circuit affirmed, noting "the affidavits . . . simply say [the defendant] lied and mistreated [the plaintiff] without any supporting facts indicating how they arrived at those conclusions.  They therefore do not satisfy the standard Rule 56(c) requires."  Id.

The respondents' proposed fact nos. 43, 44 and 45 are arguments about legal issues pertaining to procedural default which will ultimately be determined by the court as a matter of law.  Respondents have not provided a proper citation to record evidence to support their assertions as required by FED. R. CIV. P. 56(c) and LR 56.1 to render these facts undisputed.  Mr. Riley's objections to these proposed facts are sustained.

Mr. Riley also objects to proposed undisputed fact no. 46.  Mr. Riley asserts the respondents' other proposed undisputed facts (nos. 52 and 53) contradict proposed undisputed fact no. 46.  The court agrees.  Mr. Riley's objection to proposed fact no. 46 is sustained.

Mr. Riley objects to proposed undisputed fact no. 54 because, among other reasons, it is not properly supported by a citation to the record.  The

court agrees.  Mr. Riley's objection to proposed undisputed fact no. 54 is
sustained.

Mr. Riley objects to proposed undisputed fact no. 56 because, among
other reasons, it is not properly supported by a citation to the record.  The
court agrees.  Mr. Riley's objection to proposed undisputed fact no. 56 is
sustained.

Mr. Riley objects to proposed undisputed fact no. 61 because it is a legal
conclusion for the court, not an undisputed fact.  The court agrees.  Broughton
540 Fed. Appx. at 911.  Mr. Riley's objection to proposed undisputed fact no.
61 is sustained.

## 2.    Whether This Court May Consider Mr. Riley's Procedurally Defaulted Claims.

Closely related to the doctrine of state court exhaustion is the doctrine of
procedural default.  Both doctrines are animated by the same principles of
comity—that is, in our dual system of government, federal courts should defer
action on habeas matters before them when to act on those petitions would
undermine the state courts' authority, which have equal obligations to uphold
the constitution.  See Coleman, 501 U.S. at 731 (quoting Rose, 455 U.S. at
518), overruled in part on other grounds by Martinez v. Ryan, 566 U.S. 1
(2012),[15] superseded in part on other grounds by statute as recognized in

---

[15] The Martinez decision modified that part of the Coleman decision involving
whether ineffective assistance of state habeas counsel can constitute "cause"
excusing a procedural default.  See Martinez v. Ryan, 566 U.S. 1, 17 (2012)
(holding that, where state law required that ineffective assistance of counsel

Duncan v. Atchison, 2014 WL 4062737 (N.D. Ill. Aug. 13, 2014)).  While the exhaustion rule asks *whether* a petitioner has exhausted his remedies in state court, the procedural default rule asks whether the petitioner has *properly* exhausted those remedies—"whether he has fairly presented his claims to the state courts."  O'Sullivan, 526 U.S. at 848.

Procedural default is sometimes called the "adequate and independent state grounds" doctrine.  A federal habeas petitioner who has defaulted his federal claims in state court by failing to meet the state's procedural rules for presenting those claims, has committed "procedural default."  Coleman, 501 U.S. at 731-32, 735 n.1.  If federal courts allowed such claims to be heard in federal court, they would be allowing habeas petitioners to perform an "end run" around state procedural rules.  Id.  However, where no further non-futile remedy exists in state court, it is not feasible to require the petitioner to return to state court as would be the case in a dismissal for failure to exhaust state remedies.

In the Coleman case, the habeas petitioner, Coleman, had defaulted all of his federal claims by filing his notice of appeal from the state trial court three days late.  Coleman, 501 U.S. at 727-28, 749.  The state appellate court then refused to hear Coleman's appeal on the basis of his late-filing of his notice of appeal.  Id. at 740.  The Court held "[i]n all cases in which a state prisoner has

---

claims may not be raised until habeas proceedings, ineffectiveness of habeas counsel may supply "cause" sufficient to excuse a procedural default).
Martinez is discussed more fully below.

defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id. at 750. See also Ruiz v. Norris, 71 F.3d 1404, 1409 (8th Cir. 1995) ("A district court need not consider the merits of a procedurally defaulted claim.") (citations omitted).

To fit within the fundamental miscarriage of justice exception, the petitioner must make a showing of actual innocence. Schlup v. Delo, 513 U.S. 298, 321, (1995). A successful claim of actual innocence requires the petitioner to support his allegations with new, reliable evidence. Weeks v. Bowersox, 119 F.3d 1342, 1351 (8th Cir. 1997).

"Adequate and independent state grounds" exist for the state court's decision if the decision of the state court rests on state law ground that is independent of the federal question and adequate to support the judgment. Coleman, 501 U.S. at 729. "This rule applies whether the state law ground is substantive or procedural." Id. at 729. "[A] state procedural ground is not adequate unless the procedural rule is strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988).

"The federal court looks to the last, reasoned state court opinion dealing with the claim to determine whether a specific contention is procedurally defaulted. If the last state court to be presented with a particular federal claim

reaches the merits, it removes any bar that might otherwise have been available." Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004) (citations omitted).

In some limited instances Martinez v. Ryan allows a *pro se* petitioner to make a showing of "cause" for procedural default under circumstances that were previously not recognized. This, however, is not one of those circumstances.

### 3. Martinez Does Not Apply To Show "Cause" For Procedural Default Of The Claims Raised In This § 2254 Petition.

A state procedural default bars federal habeas review unless the petitioner can demonstrate "cause" for the default *and* actual prejudice as a result of the violation of federal law. Maynard v. Lockhart, 981 F.2d 981, 984 (8th Cir. 1992) (citations omitted, emphasis added). If no "cause" is found, the court need not consider whether actual prejudice occurred. Id. at 985; Wyldes v. Hundley, 69 F.3d 247, 253 (8th Cir. 1995) (citations omitted). "The requirement of cause . . . is based on the principle that petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief . . ." Cornman v. Armontrout, 959 F.2d 727, 729 (8th Cir. 1992). The habeas petitioner must show that "some objective factor *external to [petitioner]* impeded [his] efforts." Id. (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (emphasis added).

A petitioner may show cause by demonstrating that the factual or legal basis for a claim was not reasonably available to the petitioner at the time or

that there was interference by officials which prevented the petitioner from exhausting his state remedies. Murray, 477 U.S. at 488. A petitioner's lay status, *pro se* status, and lack of education are not sufficient cause to excuse a procedural lapse in failing to pursue state court remedies. See Stewart v. Nix, 31 F.3d 741, 743 (8th Cir. 1994); Smittie, 843 F.2d at 298. Illiteracy or low intelligence are also not enough to demonstrate cause. See Criswell v. United States, 108 F.3d 1381, *1 (8th Cir. 1997) (unpub'd.); Cornman, 959 F.2d at 729. Finally, neither is ignorance of the law. Maxie v. Webster, 978 F.2d 1264, *1 (8th Cir. 1992) (unpub'd.).

If a prisoner cannot raise a claim of ineffective assistance of counsel in his direct appeal, and he was not given counsel in state habeas proceedings "or his state habeas counsel was him or herself ineffective" then procedural default does not bar a federal habeas court from hearing the prisoner's ineffective assistance claims. Martinez v. Ryan, 566 U.S. 1, 14 (2012). The Court recognized a narrow exception to the unqualified statement in Coleman to the effect that the ineffectiveness of state habeas counsel does not provide cause to excuse a procedural default. The Martinez Court held that inadequate assistance of counsel or the lack of counsel at the state habeas proceedings may establish cause. Martinez, 566 U.S. at 17. The Court distinguished Coleman on the basis that the error of the state habeas lawyer in that case was *on appeal* from the trial state habeas court's decision. Id. at 15. This is different than making an error *before the state trial habeas court itself*, rather than before an appellate state habeas court. Id.

33

> Martinez announced a 'narrow exception' to the Coleman rule:
> Where, under state law, claims of ineffective assistance of trial
> counsel must be raised in an initial-review collateral proceeding, a
> procedural default will not bar a federal habeas claim of ineffective
> assistance at trial if, in the initial review collateral proceeding,
> there was no counsel or counsel in that proceeding was ineffective.

Dansby v. Hobbs, 766 F.3d 809, 828 (8th Cir. 2014) (citing Martinez, 566 U.S. at 117).

In Trevino v. Thaler, ___ U.S. ___, 133 S. Ct. 1911 (2013), the Supreme Court expanded Martinez to apply to situations where "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." Dansby, 766 F.3d at 829 (citing Trevino, 133 S. Ct. at 1921). It appears that South Dakota is such a state. See e.g., State v. Craig, 850 N.W.2d 828, 838 (S.D. 2014) ("ineffective assistance of counsel claims are generally not considered on direct appeal, because it is only through habeas corpus that a sufficient record can be made to allow the appropriate review.") (other citations omitted).

The Martinez Court explained that when the state habeas is the first opportunity for the prisoner to raise his ineffective assistance claims, that proceeding is the equivalent of a direct appeal for those claims. Martinez, 566 U.S. at 12. In many instances, prisoners are "ill-equipped" to represent themselves as to ineffective assistance claims, because they do not have the advantage of counsel's briefs or the opinion of any court addressing the errors they are alleging. Id.

Claims of ineffective assistance at trial often require investigative work and an understanding of trial strategy.  When the issue cannot be raised on direct review, moreover, a prisoner asserting an ineffective-assistance-of-trial-counsel claim in an initial-review collateral proceeding cannot rely on a court opinion or the prior work of an attorney in addressing that claim.  To present a claim of ineffective assistance at trial in accordance with the State's procedures, then, a prisoner likely needs an effective attorney.

\*\*\*

The prisoner, unlearned in the law, may not comply with the State's procedural rules or may misapprehend the substantive details of federal constitutional law.  While confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record.

Id. [16]

Mr. Riley did not have the benefit of appointed counsel in his initial-review collateral proceeding.  Under Martinez, Mr. Riley might show cause for the procedural default of his ineffective assistance claims because he was unrepresented in his initial review collateral proceeding.  Dansby, 766 F.3d at 828; (citing Martinez, 566 U.S. at 17); Craig, 850 N.W.2d at 838.   The ineffective assistance claims Mr. Riley asserts for the first time in this federal petition, even though they might otherwise fit within the Martinez framework for establishing cause, are nevertheless procedurally defaulted in this federal forum.

In this instance, Mr. Riley's *pro se* status in his state habeas action is not enough, standing alone, to excuse the procedural default of his newly

---

[16] In his brief, Mr. Riley asserts the reasoning and holding of Martinez applies to ineffectively represented prisoners but is *dicta* as to unrepresented prisoners.  This is incorrect.  Martinez, 566 U.S. at 11-12, 17.

articulated ineffective assistance claims under Martinez.  First, though newly articulated, Mr. Riley makes no assertion in this proceeding that the ineffective assistance claims which are newly articulated in this federal forum are based upon evidence which was not discoverable in time to be included in his first state habeas petition.  Murray, 477 U.S. at 488.  And, because it was Mr. Riley, not his federal counsel, who articulated these claims, Mr. Riley clearly *was* in a position to develop the evidentiary basis for them without the assistance of counsel—Mr. Riley asserted his claims himself some seven months before counsel filed his notice of appearance.  The basic premise of Martinez (the prisoner's inability to develop the evidentiary basis for his ineffective assistance claims) is therefore not satisfied.  Martinez, 566 U.S. at 12.

Mr. Riley has offered no explanation for why, if he was capable of articulating these claims when he filed his *pro se* petition in federal court, he was not similarly capable of doing so when he filed his *pro se* habeas petition in state court.  Under the particular circumstances of this case, therefore, Mr. Riley cannot show cause for his default under Martinez.

In light of the nature of Mr. Riley's newly articulated ineffective assistance claims in this forum the parties quibble in their briefs about whether Mr. Riley's position at IBM should or would have alerted him to his newly articulated claims, thereby disqualifying him from the *pro se* avenue to show "cause" under Martinez.  But that argument is a red herring.  Regardless of Mr. Riley's computer expertise or lack thereof, as explained above the important fact here is that it was *Mr. Riley*, not his federal counsel, who first

raised the procedurally-defaulted ineffective assistance claims in this federal forum.  See Docket 1.  Because *Mr. Riley* asserted these ineffective assistance claims in his *pro se* § 2254 petition at a time long before he was represented by counsel in this forum, it follows that in this instance, the absence of counsel did not cause the default of these claims at the state level.[17]

Additionally, Martinez  requires that in order to qualify for the narrow "cause" exception, ineffective assistance claims must be  "substantial" (i.e. they must have some possible merit).  Martinez, 566 U.S. at 16.  If a claim "does not have any merit or . . . is wholly without factual support . . ." then the Martinez exception does not apply.  Id.   Because Mr. Riley failed to include his current claims 1a, 1b and 1c in his original state petition and because he is now time-barred and statutorily barred from doing so pursuant to SDCL §§ 21-27-3.3 and 21-27-5.1, he has procedurally defaulted these claims. These ineffective assistance claims are insubstantial for the reasons explained below.

> ### a. Claim 1a: Counsel Failed To Adequately Discuss With Petitioner Any Discovery Provided By The Prosecution Pertaining To A Description Of A Video Used To "Shock And Awe" The Jury.  Thus No Preparation Was Made To Question The Origination Of The Video The Prosecution Claimed To Have Obtained Electronically Via The Internet.

When the layers are peeled away, this claim is a variation of Mr. Riley's assertion that there was insufficient evidence to convict him of Count I of the

---

[17] Mr. Riley likewise makes no assertion his newly articulated claims raise a new rule of constitutional law, made retroactive to cases on collateral review by the United States and South Dakota Supreme Courts, that was previously unavailable.  See SDCL § 21-27.5.1.

indictment regarding possession of child pornography.  Mr. Riley asserts if his counsel had adequately discussed the discovery materials with him, together they could have raised a reasonable doubt about who was downloading the child pornography video that was observed by Detective Kuchenreuther as being shared by someone using the IP address assigned to Mr. Riley on October 20, 2009.

Both of Mr. Riley's trial attorneys submitted affidavits addressing this allegation.  See Docket Nos. 23 & 31.  Attorney Winter stated:

> The defense team discussed the contents of the two videos with Mr. Riley in detail.  Law enforcement showed the videos to Mr. Riley when they executed the search warrant at his home. Obviously, defense counsel are not given contraband to show our clients for purposes of trial preparation.  But the content of those videos was discussed with Mr. Riley.  The notion that the video caused shock and awe to the jury may be Mr. Riley's view, but Mr. Riley knew that the jury would look at the evidence during trial because we told him so. There was no question of "the origination of the video." No one knows from where the video originated, meaning how it got onto the device from which law enforcement extracted it or from where it came before it was there, other than it was on a device that had LimeWire.  The allegation was that it was downloaded by Mr. Riley using a peer-to-peer file sharing network such as LimeWire.  The main question was whether the video was ever on any device of Mr. Riley's on the date in question.  The State never found either video on Mr. Riley's computer.  The State had no evidence to show that on October 20, 2009, that Jim Riley had either video on his computer, no evidence that there were no other computers using his IP address, and no evidence that Jim Riley had any other device with such contraband.  Further, defense counsel spent many hours with our computer forensic expert, in part to understand how law enforcement knows what videos it is looking for, how it looks into people's computers, and how it downloads them.  We learned what programs law enforcement uses to forensically seek this information in a hard drive and how they can recover from unallocated space, even files that have been deleted.  All of this information was discussed with Mr. Riley.  It may be relevant to Mr. Riley's contention here that we were

successful in not allowing the jury to see the entirety of the second video, only the portion that law enforcement downloaded. Law enforcement, based on the digital information of the video, was able to watch the remainder of the partial video that was downloaded and determined it is child pornography. Thus, the jury watched the non-pornographic partial download only. The jury then acquitted him of possessing that video.

See Docket 23, ¶ 3 (Winter Aff.). Attorney Skinner's affidavit as to this claim

states:

All aspects of discovery were discussed with petitioner, James Riley. Obviously, petitioner was not able to view the video prior to trial due to the nature of the video. Preparation was made to question the origination of the video through the testimony of both the state and defense experts. Specifically, Dan Meinke testified that numerous users and computers can use one IP address and an investigator would have no way of knowing simply by looking at an IP address "who's using it." Thus, both the state and defense experts agreed and testified to the fact there is no way of knowing what devices were behind the IP address or who was using it.

See Docket 31, ¶ 4 (Skinner Aff.).

This ineffective assistance claim has been categorized by Mr. Riley as a sub-part of his overall ineffective assistance claim which is entitled "failure to investigate." See Docket 16, p. 5. Mr. Riley has offered nothing at all in response to his trial attorneys' affidavits explaining (1) they discussed all of the discovery with him; and (2) how they prepared to challenge at trial the state's claim that it was Mr. Riley who had downloaded the child pornography videos which were the subject of the indictment.

In response to the respondents' motion for summary judgment, Mr. Riley has offered nothing to explain how any further or different discussion with him about the discovery in his case or the "origination" of the video with his trial

39

attorneys would have changed the outcome of his trial.  Once the respondents met their burden, Mr. Riley could not simply rest on the allegations in his pleadings, but was required to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Anderson, 477 U.S. at 256; FED. R. CIV. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"

guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

Mr. Riley's ineffective assistance claim 1a may be dismissed on the merits as insubstantial because it is wholly conclusory. General allegations in a § 2254 petition are insufficient when the petitioner fails to articulate facts to support his constitutional claim. Wiggins v. Lockhart, 825 F.2d 1237, 1238 (8th Cir. 1987). In this, his federal § 2254 petition, Mr. Riley simply alleges his attorneys failed discuss discovery with him to help discover the "origination" of the videos, but he does not elaborate about what discovery was not discussed, what further discussion should have been had, or how such a discussion would have led to evidence which would have resulted in a different outcome.

In Neal v. Acevedo, 114 F.3d 803 (8th Cir. 1997), the § 2254 petitioner made an ineffective assistance claim very similar to Mr. Riley's claim in this case. Neal was convicted of first-degree kidnapping. Id. at 805. After unsuccessful direct appeals and state habeas proceedings, Neal brought a federal § 2254 petition. Id. One of the claims he presented was that his counsel was ineffective "by failing to consult with him sufficiently to prepare for

trial." Id. at 806.  The court recited the Strickland standard, but rejected

Neal's claim.  Id.   The court observed:

> [Petitioner] has failed to provide any examples of evidence counsel
> could have discovered through further investigation or what
> exculpatory information [he] could have conveyed to counsel
> through further consultation.  See, Otey v. Grammer, 859 F.2d
> 575, 578 (8th Cir. 1988) (burden on petitioner to show what would
> have helped defense); United States v. Mealy, 851 F.2d 890 (7th
> Cir. 1988) (conclusory allegations regarding time spent in
> consultation with trial counsel do not show how petitioner was
> prejudiced at trial; thus ineffective assistance claim fails).

Id.

Similarly, Mr. Riley fails to provide any persuasive facts showing that but

for his counsel's unprofessional errors, the outcome of his case would have

been different.  Strickland, 466 U.S. at 687.  This court respectfully

recommends to the district court that Mr. Riley's claim 1a is insubstantial and

is therefore procedurally defaulted.  As such, it should be dismissed with

prejudice and no certificate of appealability should be issued.

### b. Claim 1b: Counsel Failed To Interview or Call Petitioner's Daughter, Staci Klansky.  Ms. Klansky Was a Critical Witness. She Had Been With Petitioner While He Was In California And Could Have Testified That Petitioner's Computer Had "Crashed" And Required Rebuilding.  This Testimony Would Have Debunked The State's Claim That The Computer System Had Been Reloaded To Destroy Contraband.

The respondents submitted affidavits from both of Mr. Riley's trial

counsel regarding Mr. Riley's claim that they failed to interview or call Staci

Klansky as a witness.  Mr. Skinner stated:

> Affiant recollects having limited phone calls with petitioner's
> daughter, Staci Klansky.  Affiant does not recall the specific nature
> of the calls, however affiant agrees her testimony would have been

42

cumulative. Petitioner's girlfriend testified that petitioner had said that his computer had crashed in California. Affiant does not specifically recall petitioner asking or insisting that his daughter be called as a witness. Certainly the jury could infer that, because she is family, she would simply be attempting to "cover up" for her father. Because there was expert testimony regarding the crashing of the computer, bad sectors, etc., affiant believes it was sound strategy to not call a family member. Affiant cannot specifically recollect a discussion with petitioner's daughter, but bias certainly would have been a concern with putting a family member on the stand where her testimony would have been cumulative.

See Docket 31, ¶ 5 (Skinner Aff.). Attorney Winter also submitted his

recollections regarding the absence of Ms. Klansky's testimony from trial:

Affiant does not specifically recall Ms. Klansky or that she had knowledge that Mr. Riley's computer crashing, although Mr. Riley always maintained that his computer had crashed while in California. Our expert testified that that was the most likely scenario if I recall correctly. He testified that there were numerous bad sectors on the computer such that it was failing and that a normal response by the computer user would be to reload the operating system, which Mr. Riley had done. The allegation that Mr. Riley had reloaded the operating system to destroy evidence was merely that. Further, the State's expert could not refute the fact that he recovered no contraband on Mr. Riley's computer despite the fact that there were more than 70 contraband video titles observed by the investigator who was looking behind Mr. Riley's IP address. Again, the State's expert and our expert said that one would expect to recover some, if not all of the videos on a normal computer, even after reloading the operating system. Thus, the bad sectors on the computer explained Mr. Riley's reload of the operating system, but even that should not have destroyed all the contraband such that it could not be recovered by the forensic methods. Ms. Klansky's testimony, in other words, would have been cumulative at best from a strategic standpoint.

See Docket 23, ¶ 4 (Winter Aff.). In the face of these assertions from his trial

counsel in support of the respondents' motion for summary judgment,

Mr. Riley cannot simply rest on the allegations in his pleadings, but is required

to set forth specific facts, by affidavit or other evidence, showing that a genuine

issue of material fact exists.  <u>Anderson</u>, 477 U.S. at 256; Fed. R. Civ. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).  He did not do so.

"[A] meaningful opportunity to present a complete defense does not translate into the right of a defendant to present any evidence he may deem important to his defense."  <u>Strickland v. Lee</u>, 471 F. Supp. 2d 557, 617 (W.D. N.C. 2007).  Instead, to prove prejudice, Mr. Riley must show the uncalled witness would have testified in his defense,[18] that her testimony would have been favorable, and that her testimony "probably would have changed the outcome of the trial."  <u>See</u> <u>Lawrence v. Armontrout</u>, 900 F.2d 127, 130 (8th Cir. 1990); <u>Stewart</u>, 31 F.3d at 744.  The habeas court must avoid "the distorting effects of hindsight and try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time."  <u>Id.</u> (citations omitted, punctuation altered).  "Complaints of uncalled witnesses are not favored . . . because allegations of what the witness would have testified [to] are largely speculative."  <u>Evans v. Cockrell</u>, 285 F.3d 370, 377 (5th Cir. 2002). "[T]he petitioner ordinarily should explain  . . . with some precision, the content of the testimony they would have given at trial."  <u>Lawrence,</u> 900 F.2d at 130.

---

[18] Mr. Riley insists he is entitled to an evidentiary hearing on these procedurally defaulted claims, but he has not made the showing required by 28 U.S.C. § 2254(e).  Mr. Riley likewise did not meet the respondents' motion for summary judgment with an affidavit from Ms. Klansky or any other evidence to support his claim that she would have actually testified in his criminal trial had his attorneys done what he claims they should have done.

This claim fails because Mr. Riley cannot not show his daughter's testimony would have favorably influenced and/or changed the outcome of his trial. <u>Lawrence</u>, 900 F.2d at 130. The proposed testimony would have been merely cumulative to Lori's testimony, who also testified that Mr. Riley's computer had "crashed" while he was in California and that immediately upon his return home, he set about working on it. <u>Worthington v. Roper</u>, 631 F.3d 487, 504 (8th Cir. 2011)(failure to present cumulative evidence is not ineffective assistance); <u>Hall v. Luebbers</u>, 296 F.3d 685, 693 (8th Cir. 2002) (same).

Witnesses for the prosecution and the defense testified Mr. Riley's computer had bad sectors, was probably failing, and that reinstalling the operating system would be a normal action for someone with a failing computer. See JT 244, (Eisenbraun); 139 (Kuchenreuther); 248 (Eisenbraun); 274-77 (Meinke). Putting Ms. Klansky on the stand would have merely given the prosecution a more direct shot to prove the opposite of what Mr. Riley intended. On cross-examination, the prosecution would have had a wonderful opportunity to emphasize the folly in the argument that the operating system was reinstalled because of a computer crash rather than in an attempt to destroy evidence. This is because if the computer crashed in California, why didn't Mr. Riley immediately reinstall the operating system when he was in California? Instead, he waited to perform the reinstallation until he arrived home in the middle of the night after being on the road for 14 hours straight

(Trial EX 11), after his girlfriend informed him law enforcement would arrive in a few hours to search his computer for evidence of child pornography.

It is extremely likely that Mr. Riley stood to lose just as much (and probably more) than he stood to gain by subjecting his daughter to cross-examination.  In assessing ineffective assistance claims under the Strickland v. Washington, 466 U.S. 668 (1984) standard, "[t]he decision not to call witnesses is a virtually unchallengeable decision of trial strategy."  United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005) (citations omitted, punctuation altered).  Here, the court concludes counsel's decision not to call Ms. Klansky as a witness constituted sound trial strategy.

 For all of these reasons, Mr. Riley fails to establish cause for his procedural default of this ineffective assistance claim because he has not shown it is "substantial" as required by Martinez.  It is therefore recommended to the district court that claim 1b be dismissed with prejudice and that no certificate of appealability be issued.

### 4.   Mr. Riley Has Not Presented Evidence Of His Actual Innocence.

Mr. Riley also fails to show that a fundamental miscarriage of justice will result if his defaulted claims are not considered.  See Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (petitioner must present new evidence that affirmatively demonstrates he is actually innocent of the crime for which he was convicted in order to fit within the fundamental miscarriage of justice exception).  Mr. Riley has shown neither cause nor prejudice (Maynard, 981

F.2d at 984), nor that a fundamental miscarriage of justice will result if his defaulted claims are not considered by this court (Abdi, 450 F.3d at 338). As a result, Mr. Riley's claims 1a, 1b and 1c[19] are procedurally defaulted and should be denied.

Mr. Riley has given the state courts a full and fair opportunity to resolve the federal constitutional issues presented as to the claims 1d, 2 and 3 cited in this, his federal habeas petition. As to those claims, Mr. Riley has invoked one full round of South Dakota's established appellate review process. Those claims, therefore, are properly before this court. O'Sullivan, 526 U.S. at 845. They are discussed below.

## D. The Respondent's Motion to Dismiss:  Mr. Riley's Properly Exhausted Claims.

Mr. Riley properly exhausted three of his federal claims—one on direct appeal and two in his *pro se* state habeas proceedings. The respondents move to dismiss those claims, asserting the state court reached a decision that was based upon a reasonable determination of the facts and that the state court did not unreasonably apply federal law.  28 U.S.C. § 2254(d)(1)&(2).

### 1. Rule 12(b)(6) Standards.

The respondents' motion to dismiss is based on FED. R. CIV. P. 12(b)(6), which allows dismissal if the plaintiff has failed to state a claim upon which relief can be granted.  Plaintiffs must plead "enough facts to state a claim to

---

[19] Again, Mr. Riley has withdrawn claim 1c, so this court recommends without discussion that it be dismissed with prejudice.

relief that is *plausible* on its face." Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)). A complaint does not need "detailed factual allegations" to survive a motion to dismiss, but a plaintiff must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action. Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). There is also a "plausibility standard" which "requires a complaint with enough factual matter (taken as true)" to support the conclusion that the plaintiff has a valid claim. Id. at 556. The plaintiff's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief. Id.

There are two "working principles" that apply to Rule 12(b)(6) motions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a complaint. Id. (citing Papasan, 478 U.S. at 286). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

at 679 (quoting decision below <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-158 (2d Cir. 2007)).  Where the plaintiff's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has *alleged* "but has not 'show[n]' "that he is entitled to relief as required by Rule 8(a)(2).  <u>Iqbal</u>, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the complaint that are conclusory and therefore not entitled to the presumption of truth.  <u>Id.</u> at 679-680.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief.  <u>Id.</u> at 679; <u>Twombly</u>, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief."  <u>Iqbal</u>, 556 U.S. at 679.  These are the principles guiding the court's evaluation of respondents' motion.

### a. Claim 1d: Counsel Failed to Object to the Improper Courtroom Closure.

Mr. Riley raised this claim in his *pro se* state habeas petition.  Docket 17-4, pp. 20-21.  The entirety of the discussion which occurred when the issue of closing the courtroom arose is recounted at page 13 of this opinion.  <u>See</u> <u>also</u> <u>Riley II</u>, 879 N.W.2d at 111.  As that discussion illuminates, Judge Davis declined to rule on the motion.  <u>Id.</u> at 112-13.  Rather, the only non-trial participant in the courtroom was an individual associated with Mr. Riley, and

that person was allowed to stay in the courtroom or leave, at his own option.
Id.

In his letter decision, Judge Trimble concluded there was no courtroom closure. Docket 17-4, p. 14. As such, Mr. Riley's counsel could not have been ineffective for failing to object. Id. The South Dakota Supreme Court agreed. Riley II, 879 N.W.2d at 113. For the reasons more fully explained below in Section D.1.b of this opinion, this court agrees there was no courtroom closure. Failure to file a motion that has little chance of success fails to meet Strickland's deficient performance or prejudice requirements. Hale v. Lockhart, 903 F.2d 545, 549 (8th Cir. 1990). Therefore, this court likewise agrees Mr. Riley's counsel was not deficient for failing to object to a courtroom closure that never happened.

Having thoroughly reviewed the state court record, this court finds the state court made factual findings that were fairly supported in the record and it did not unreasonably apply federal law. 28 U.S.C. § 2254(d)(1) & (2). It is recommended to the district court that this claim for relief be denied with prejudice and that no certificate of appealability be issued.

### b. Claim 2: The Improper Closure of the Courtroom Violated Petitioner's Sixth Amendment Right to a Public Trial.

The Sixth Amendment to the United States Constitution states in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ." U.S. CONST. amend. VI. Mr. Riley asserts his jury

trial was impermissibly closed to the public in violation of the Sixth Amendment.  Docket 16, p. 6.

Mr. Riley raised this issue in his state habeas petition, but the state habeas trial court and the South Dakota Supreme Court rejected it.  Riley II, 879 N.W.2d 108, 112-13 (S.D. 2016).  The court now examines the applicable facts and law to determine whether the state courts reasonably applied Supreme Court precedent regarding Mr. Riley's Sixth Amendment right to a public trial.

In Waller v. Georgia, 467 U.S. 39 (1984), a criminal defendant's Sixth Amendment right to a public trial was examined by the United States Supreme Court in the context of a suppression hearing.  Waller, 467 U.S. at 41.  Wiretaps on the petitioners' home phones revealed a large scale gambling operation based on the volume of stocks and bonds traded on the New York Stock Exchange.  Id.  Eventually the petitioners' homes were searched.  Id.  Before their trials, the petitioners moved to suppress evidence, arguing, among other reasons, that the warrants which authorized the wiretaps were not supported by probable cause.  Id.

The state moved to close the suppression hearing to the public because during the hearing it would be introducing evidence "which might involve a reasonable expectation of privacy of persons other than the defendants."  Id. (internal citation omitted).  The prosecution argued that any publication of wiretap information that was not necessary and essential would cause the wiretap information to become inadmissible in evidence.  Id. at 41-42.  "Over

objection, the court ordered the suppression hearing closed to all persons other than witnesses, court personnel, the parties and lawyers." Id. at 42. The entire suppression hearing was closed, even though the wiretap information consumed only 2 ½ hours of the seven-day hearing. Id. at 42. The petitioners argued the manner in which the suppression hearing was closed to the public did not comport with the Sixth Amendment. The United States Supreme Court agreed. Id. at 48.

> The Court observed

> [T]he right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interests in inhibiting disclosure of sensitive information. Such circumstances will be rare, however and the balance of interests must be struck with special care. . . . The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure was properly entered.

Id. at 45 (citations omitted, punctuation altered). The Court noted that though most analysis on the subject had been based upon the First Amendment interests of the press and the public, "the requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions . . ." Id. at 46 (citations omitted).

The Court instructed that a court contemplating closing its proceedings should (1) determine that the party seeking the closure has advanced an

overriding interest that is likely to be prejudiced; (2) ensure the closure of the courtroom is no broader than necessary; (3) consider reasonable alternatives to closing the courtroom; and (4) make findings adequate to support the closure. Waller, 467 U.S. at 48.

Before the suppression hearing, however, the only evidence about which the prosecutor expressed any concern was the information contained in the wiretaps, and that publishing them might make the information they contained inadmissible. Id. The Supreme Court found this broad assertion was not enough "to justify closure of the entire hearing." Id. at 48. The Court remanded to the state court to decide what portion, if any, of the suppression hearing may be closed. "A new trial need be held only if a new, public suppression hearing results in the suppression of material evidence not suppressed at the first trial, or in some other material change in the position of the parties." Id. at 50.

In Globe Newspaper Co. v. Superior Ct. for Norfolk. County, 457 U.S. 596 (1982), the issue was whether a statute which required the complete closure of the courtroom during the testimony of a minor sexual assault victim's testimony violated the First Amendment. Id. at 602-03. The Court held that *mandatory* closure violated the Constitution. Id. at 602. Instead, the Court articulated factors which should be considered to determine whether closure is necessary to protect the welfare of a child sex abuse victim including: the victim's age, psychological maturity and understanding, the nature of the

crime, the victim's wishes, and the interests of the parents and relatives.  Id. at 608.

Though the United States Supreme Court has not directly addressed the standards applicable to a partial, as opposed to a complete, courtroom closure, the Eighth Circuit has.[20]  In United States v. Farmer, 32 F.3d 369 (8th Cir. 1994) the defendant was convicted of aggravated sexual abuse for the rape of a seventeen-year old girl.  Id. at 370.  Over the defendant's objection at trial, the judge cleared the courtroom of spectators during the victim's testimony, except for the victim's immediate family and her psychologist.  Id. at 370-71.  On appeal, the defendant challenged the district court's partial closure of the jury trial during the victim's testimony.  Id. at 370.

The Eighth Circuit acknowledged Waller, but joined several other circuit courts of appeal in concluding "when a trial judge orders a partial, as opposed to a total, closure of a court proceeding at the request of one party a 'substantial reason' rather than Waller's 'overriding interest' will justify the

_____

[20] See, United States v. Thompson, 713 F.3d 388, 395 (8th Cir. 2013). "Whether a closure is total or partial, according to this circuit's precedent, depends not on how long a trial is closed, but rather who is excluded during the period of time in question. United States v. Thunder, 438 F.3d at 866, 868 (8th Cir. 2006) (explaining that the exclusion of the members of the public and the press during a child victim's testimony is a total closure of the courtroom); United States v. Farmer, 32 F.3d 369, 370–71 (8th Cir. 1994) (ordering all spectators other than the members of the victim's family from the courtroom during the balance of the victim's testimony was a partial closure); see also Woods v. Kuhlmann, 977 F.2d 74, 75–6 (2d Cir.1992) (ordering all members of the defendant's family from the courtroom after the prosecutor informed the judge that a witness was terrified of retaliation from the family was a partial closure)."

closure, because a partial closure does not implicate the same secrecy and fairness concerns that a total closure does." Id. at 371 (citation omitted, punctuation altered).

The closure was partial in the sentencing hearing in Thompson. There, the court reiterated that the party requesting the closure need only show a "substantial reason" rather than an "overriding interest." Thompson, 713 F.3d at 395 (citing United States v. Petters, 663 F.3d 375, 383 (8th Cir. 2011)).

> "The justification for this lower,['substantial reason'] standard is that a partial closure does not implicate the same secrecy and fairness concerns that a total closure does." Petters, 663 F.3d at 383 (internal quotations omitted). So, a partial closure does not rise to the level of a Sixth Amendment violation if: (1) there is a substantial interest likely to be prejudiced; (2) the closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding, and (4) the trial court makes findings adequate to support the closure. Farmer, 32 F.3d at 371. Additionally, even though a trial court must make sufficient findings to allow the reviewing court to determine whether the partial closure was proper, in this circuit, "specific findings by the district court are not necessary if we can glean sufficient support for a partial temporary closure from the record.'" Id.

Thompson, 713 F.3d at 395. The Thompson court found that the removal of the defendant's family members from the courtroom during one witness's testimony at sentencing was a partial closing. Id. The witness had expressed fear for his own safety for testifying against the defendant (an alleged gang member), who had been convicted on charges of being a felon in possession of a firearm. Id. at 391. The Eighth Circuit noted that though the district court had not made a thorough record articulating the substantial reason for partially closing the courtroom during the witness's testimony, the record was

55

sufficient on appeal for the court of appeals to do so on its own.  Id. The court

reviewed the necessary factors and found no abuse of discretion by the district

court in partially closing the courtroom for the testimony of one witness during

Mr. Thompson's sentencing hearing.  Id. at 396.

With these standards in mind, the court turns to the proceedings in

Mr. Riley's case.  The transcript clearly demonstrates that though the

prosecutor moved to close the courtroom to the public, Judge Davis did not

rule on the motion.  The one person in the courtroom who was not affiliated

with law enforcement or an expert for either the prosecution or the defense was

identified as being associated with Mr. Riley in some fashion (he was never

identified by name, just as a person associated with Mr. Riley)—and that

person was allowed to stay or go at his own option.  JT at 110.

There is no indication in the record that the lone spectator in the

courtroom was even prevented from viewing the video clip that was published

to the jury.  Had the prosecutor chosen to darken the monitors to the

courtroom gallery or otherwise prevent the spectator from viewing the video clip,

however, such action would likewise not have given rise to constitutional error.

United States v. Boyle, 700 F.3d 1138, 1144-45 (8th Cir. 2013).  In Boyle, the

defendant argued on direct appeal that the district court violated his Sixth

Amendment right to a public trial when it blocked the courtroom monitors

during the time the prosecution played a video of alleged child pornography.

Id.  The trial participants could see their monitors but members of the public in

the gallery could not see the images that formed the basis for the government's

allegations.  Id.  Mr. Boyle asserted this amounted to a courtroom "closure" without sufficient findings as required under Waller.  Id.  The court disagreed, explaining turning off one monitor during the presentation of sexually explicit material "did not prevent anyone from attending the trial or reporting on what transpired . . . ," which is the purpose of the public trial requirement under the Sixth Amendment.  Id. (quoting Nixon v. Warner Communications, Inc., 435 U.S. 589, 610 (1978)).  Additionally, the court noted there was no authority requiring child pornography to be published to each and every member of the public in the courtroom in order to comply with the requirements of Sixth Amendment.  Id.

The court reached the same result in United States v. Killingbeck, 616 Fed. Appx. 14 (2d Cir. 2015).  In that case, the trial court also shut off the courtroom monitors for court spectators, but only during the jury's viewing of the alleged child pornography.  Id. at 16.  The Killingbeck court observed that even if turning off the spectators' monitors constituted a partial courtroom closing, it did not affect the fairness, integrity or public reputation of Mr. Killingbeck's trial.  Id.  There were substantial reasons for not allowing the general public to see the child pornography images—namely limiting the continuing harm to the victims of child pornography.  Id. (citing Osborne v. Ohio, 495 U.S. 103, 111 (1990)).

This court has extensively reviewed the state court records in Mr. Riley's case, including but not limited to the trial transcript.  The South Dakota Supreme Court found Mr. Riley's trial was not closed because Judge Davis,

having found it unnecessary to do so, never ruled upon the prosecutor's motion to close the trial. Riley II, 879 N.W.2d at 113. There is no evidence the lone spectator was prevented from viewing the video, so there is likewise no evidence of even a partial courtroom closure. Because Mr. Riley presented nothing but bare allegations that that anyone was actually excluded from the courtroom, the South Dakota Supreme Court found his Sixth Amendment public-trial violation claim "failed to meet the 'minimum threshold of plausibility.'" Id. (citation omitted).

This court finds the South Dakota state court made factual findings that were fairly supported in the record and it did not unreasonably apply federal law. 28 U.S.C. § 2254(d)(1) & (2). It is therefore recommended that Mr. Riley's second claim for relief be denied with prejudice and that no certificate of appealability be issued.

### c. Claim 3: Petitioner Was Convicted Without Sufficient Evidence to Support the Conviction, in Violation of His Due Process Rights Under the Fifth and Fourteenth Amendments to the United States Constitution.

Mr. Riley raised this claim in his direct appeal. The South Dakota Supreme Court affirmed his conviction, finding that though no images of child pornography were found on Mr. Riley's computer, the circumstantial evidence was sufficient to support his conviction for possession of child pornography. Riley I, 841 N.W.2d at 438.

Federal habeas relief for state prisoners is limited to claims asserting a violation of a federal constitutional provision, a federal law, or a federal treaty:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

See 28 U.S.C. § 2254(a). The Supreme Court has held that "a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim." Jackson v. Virginia, 443 U.S. 307, 321 (1979).

This is because the Constitution requires proof of guilt beyond a reasonable doubt for a criminal conviction. In re Winship, 397 U.S. 358, 364 (1970). This requirement stems from the Due Process clauses of the Fifth and Fourteenth Amendments. Id. The Due Process clause requires proof beyond a reasonable doubt in support of every essential element of the crime of conviction. Jackson, 443 U.S. at 313-14. Thus, in order to satisfy the Due Process clause, the jury has to have been instructed on the beyond-a-reasonable-doubt standard *and* the jury has to have rationally applied that standard to the evidence. Id. at 317-19. When a federal court reviews a sufficiency of the evidence claim as to a state court conviction, the appropriate standard to apply is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at p. 319, 324.

State court findings of fact are presumed correct in federal habeas actions unless the findings are based on an unreasonable determination of the

59

facts in light of the evidence presented in the state court proceeding.  See 28 U.S.C. § 2254(d)(2).  When the record contains evidence with conflicting inferences, the federal court must presume that the jury resolved the evidentiary conflicts in favor of the state even if the record does not affirmatively show the jury did so.  Jackson, 443 U.S. at 326.  The prosecution need not have ruled out every hypothesis except that of the petitioner's guilt beyond a reasonable doubt.  Id.  A state appellate decision regarding sufficiency of the evidence is entitled to deference.  Id. at 323.  See also Lewis v. Jeffers, 497 U.S. 764, 783 (1990) ("a federal court should adhere to the Jackson standard even when reviewing the decision of a state appellate court that has independently reviewed the evidence, for the underlying question remains the same").

A state prisoner asserting a sufficiency of the evidence claim in federal habeas court faces a high bar.  Coleman v. Johnson, 566 U.S. 650, 132 S. Ct. 2060, 2062 (2012).  This is because it is the primary responsibility of the *jury* not a court to decide "what conclusions should be drawn from evidence admitted at trial."  Id.  A reviewing court on direct appeal may overturn a jury verdict only if "no rational trier of fact could have agreed with the jury."  Id. (quoting Cavazos v. Smith, 565 U.S. 1, 2 (2011) (*per curiam*)).  Second, when a federal habeas court reviews a state court decision, it may not overturn that "decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.' "  Id. (quoting

60

<u>Cavazos</u>, 132 S. Ct. at 4).  Federal courts look to state law for "the substantive elements of the criminal offense." <u>Id.</u> at 2064.  But the question of whether the quantum of evidence adduced at trial is sufficient to satisfy the Due Process Clause is "purely a matter of federal law." <u>Id.</u>

When evaluating the sufficiency of the evidence, circumstantial evidence and direct evidence should be given equal weight.  <u>Holland v. United States</u>, 348 U.S. 121, 140 (1954).  "If the jury is convinced beyond a reasonable doubt, we can require no more." <u>Id.</u> at 138.  "The essential elements of a crime may be proved by circumstantial evidence as well as direct evidence." <u>United States v. Foote</u>, 898 F.2d 659, 663 (8th Cir. 1990) (citing <u>Holland</u>, 348 U.S. at 140)).  In other words, a verdict may be based in whole or in part on circumstantial evidence.  <u>Holland</u>, 348 U.S. at 140; <u>United States v. White</u>, 794 F.3d 913, 918 (8th Cir. 2015).

Mr. Riley was convicted of possession of child pornography in violation of SDCL § 22-24A-3(3).  That statute states in relevant part:

> **22-24A-3.  Possessing, Manufacturing, or distributing child pornography—Felonies—Assessment**
>
> A person is guilty of possessing, manufacturing, or distributing child pornography if the person:
>
> \*\*\*
>
> (3)    Knowingly possesses, distributes or otherwise disseminates any visual depiction of a minor engaging in a prohibited sexual act, or on the simulation of such an act.

The jury received instructions regarding its duty to unanimously find Mr. Riley guilty of the offense charged beyond a reasonable doubt.  <u>See</u> jury

instruction numbers 6 & 7 (state has burden of proving guilt beyond a reasonable doubt) and 38 (verdict must be unanimous), SR 202, 203, 234.

In its decision affirming the jury's verdict, the South Dakota Supreme Court noted the state relied entirely on circumstantial evidence to convict Mr. Riley of possessing the complete video. Riley I, 841 N.W.2d at 436. But, the court noted, direct and circumstantial evidence carry equal weight and if the circumstantial evidence and reasonable inferences drawn from that evidence sustain a reasonable theory of guilt, the verdict should not be set aside. Id. The court also recognized that the applicable standard of review was "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 437. The court recounted the following circumstantial evidence:

- The reinstallation of the operating system, the deletion of numerous other files, and Mr. Riley's past employment with IBM together with his knowledge that police were coming to search his computer;

- Mr. Riley's admission that he used LimeWire and "glanced at" child pornography;

- Mr. Riley's statement that "it's gone" in regard to the 79 video files containing child pornography;

- The text strings suggesting child pornography; and

- The evidence that Mr. Riley was the only user of the only operable computer at an IP address that was downloading child pornography.

Id. at 438.  The court concluded that in reviewing the evidence in the light most favorable to the verdict, there was sufficient evidence for a rational jury to find Mr. Riley guilty beyond a reasonable doubt.  Id.

A strong dissent in Riley I argued the circumstantial evidence was insufficient to prove Mr. Riley possessed child pornography.  Id. at 438-40 (Wilbur, J., dissenting).  The dissent argued the state produced no evidence it was Mr. Riley who connected to the IP address at his home.  Id. at 439.  In addition, the dissent argued the state never presented a visual depiction of child pornography.  Id.  The dissent also characterized the text string evidence as equivocal.  Id.

The evidence against Mr. Riley was circumstantial, but as Henry David Thoreau said, "some circumstantial evidence is very strong, as when you find a trout in the milk."  It is true, as the dissent in Riley I asserted, that the evidence of the text strings found on Riley's hard drive was equivocal. Eisenbraun testified that the name used in the text string could be completely disassociated with the content.  However, Eisenbraun also testified the text string names were suggestive of child pornography and two of them matched the two of the names on the list of 79 videos Kuchenreuther was able observe at Mr. Riley's IP address.  It would be as odd as finding a trout in the milk for an innocent man to embed text strings suggestive of child pornography in his computer.  Even odder for those text strings to match the descriptions witnessed by Kuchenreuther at Mr. Riley's IP address three months earlier.

As to the dissent's argument that Kuchenreuther was unable to identify a specific computer on the date in question which was using Mr. Riley's IP address, that is true. But Riley's girlfriend supplied the necessary connection when she testified there was only one operable computer in the house, that Riley was the sole user of that computer, and that Riley was the only one in the house who accessed the internet.

Finally, even if Riley reinstalled the operating system on his computer because it had crashed in California, the jury surely found it odd that, after a 14-hour drive in a car arriving home at 1 a.m., Riley chose to stay up all night long reinstalling the operating system--after his girlfriend notified him police would be returning at 6 a.m. to search.

The admissions Riley made that he "glanced at" child pornography and that the 79 videos were "gone" is sufficient to establish the actual existence at one time of visual depictions of child pornography on Riley's computer. It was also sufficient evidence that the state played the one complete video which Kuchenreuther was able to download from Mr. Riley's IP address on October 20, 2009. The fact that that video was no longer on Mr. Riley's computer on January 16, 2010, is nearly irrelevant to Mr. Riley's conviction.

An example helps. If this case had occurred pre-Internet, Mr. Riley could have possessed a VHS tape of child pornography. Assume he then gave that VHS tape to an undercover officer who viewed the video and saw it contained contraband. The officer then applied for a search warrant to search Mr. Riley's house. The VHS tape Mr. Riley previously gave the officer is not found in the

search of the house.  Does this mean the state has insufficient evidence to prosecute Mr. Riley for possessing child pornography?  The answer is, of course, "no."  The only difference between this example and the true facts of Mr. Riley's case is that he "gave" the undercover officer a copy of his child pornography video via the Internet instead of handing the officer a physical object containing the imagery.  The evidence that he possessed the video in both cases is very nearly the same under the particular facts of this case—that there was only one functional computer, only Mr. Riley used that computer, and only Mr. Riley accessed the Internet.  The officer would testify in the VHS trial that he obtained the video from Mr. Riley, that the video contained child pornography, and then the video would be played for the jury so they could make that determination themselves.  That is exactly what happened here.

Even if this court were to disagree with the conclusion of the majority in Riley I, that alone would not be grounds for granting habeas relief.  This court may overturn the South Dakota Supreme Court's finding on the sufficiency of the evidence *only if* that decision was " 'objectively unreasonable.' " Coleman, 132 S. Ct. at 206 (quoting Cavazos, 132 S. Ct. at 4)).

In a child pornography case, it is highly unusual for a conviction to result where no contraband images are found on any of the defendant's computers or related hardware.  But in this case, the circumstantial evidence indicating Mr. Riley in fact possessed child pornography is strong enough that this court cannot conclude it was "objectively unreasonable" for the South Dakota Supreme Court to find that a rational trier of fact could have found

Mr. Riley guilty beyond a reasonable doubt.   <u>Holland</u>, 348 U.S. at 140; <u>White</u>, 794 F.3d at 918; <u>Coleman,</u> 132 S. Ct. at 206 (quoting <u>Cavazos</u>, 132 S. Ct. at 4)).  This court finds the South Dakota state court made factual findings that were fairly supported in the record and it did not unreasonably apply federal law.  28 U.S.C. § 2254(d)(1) & (2).  It is therefore recommended that Mr. Riley's third claim for relief be denied with prejudice and that no certificate of appealability be issued.

## CONCLUSION

Based on the foregoing law, facts, and analysis, this court respectfully recommends that respondents' motion to dismiss [Docket No. 18] be granted; that respondents' motion for summary judgment [Docket No. 22] be granted; and that petitioner James Duane Riley's habeas petition be dismissed in its entirety ***with prejudice***.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by the District Court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

DATED February 17, 2017.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

66